IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STELLA OGUNWOLE, | * | |
| Plaintiff, | | |
| | * | |
| v. | | Civil Action No. 8:21-cv-01680-PX |
| | * | |
| GINA RAIMONDO<br>Secretary of Commerce<br>United States Department of Commerce | * | |
| | * | |
| Defendant. | * | |
| | *** | |

**MEMORANDUM OPINION**

Pending in this employment discrimination action is Defendant Gina Raimondo's motion for summary judgment.[1] Finding no hearing necessary, *see* D. Md. Loc. R. 105.6, and for the following reasons, the Court GRANTS the motion.

**I.     Background**[2]

Plaintiff Dr. Stella Ogunwole ("Dr. Ogunwole") is a 63-year-old, African American woman of Nigerian descent. ECF No. 1 ¶¶ 2, 25–28. Dr. Ogunwole holds a bachelor's degree in population dynamics, a master's degree in demography, and a doctorate in sociology. ECF No. 12-2 at 134. For over twenty years, she has worked for the United States Census Bureau (the "Census Bureau" or "Agency") as a statistician. ECF No. 1 ¶ 29; ECF No. 12-2 at 131–33. Throughout most of her career, Dr. Ogunwole believed her supervisors treated her poorly on account of her race and national origin. *See* ECF No. 12-2 at 51–55. She recalls colleagues

---

[1] The named defendant, current Secretary of Commerce Gina Raimondo, is sued in her official capacity on behalf of the United States Census Bureau, which is an agency within the Department of Commerce.

[2] Except where otherwise noted, the facts related below are undisputed and construed most favorably to Dr. Ogunwole as the non-movant. *See News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010); *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 364 n.3 (D. Md. 2011).

having commented that her accent was "bad;" that her suggestion of background color in a slide deck was too "afro-centric;" and that because she is Nigerian, she is treated better than other African Americans. *Id*. at 52 & 54.

Evidently, Dr. Ogunwole's unpleasant experiences were well-known within the Agency. One of Dr. Ogunwole's supervisors, Dr. Andrew Roberts ("Dr. Roberts"), remarked that she had been "put through the wringer and bounced around, and it is rather unfortunate but life is not always fair." ECF No. 12-2 at 51. During a conversation about her career trajectory, another supervisor, Roberto Ramirez, alluded to the "elephant in the room" being "racism." *Id*. This "elephant in the room," Dr. Ogunwole contends, has "continuously" caused her to be passed over for promotions for nearly two decades. *See* ECF No. 15-1 at 9.

Here, however, Dr. Ogunwole solely challenges her non-selection for a GS-13 level Survey Statistician position in late 2018. At the time, two such positions were vacant: one in the Sex and Age Statistics Branch and the other in the Ethnicity and Ancestry Branch. ECF No. 12-2 at 30. For each position, the Agency sought candidates with strong skills in project management, team leadership, and communication, as well as technical "experience creating and reviewing survey specifications and procedures and creating new programs" using Statistical Analysis Software ("SAS"), the primary statistical analysis software of the Census Bureau. *Id.* at 9, 106–107.

Twenty individuals, including Dr. Ogunwole, applied for the positions. *See* ECF No. 12-2 at 173 & 175. Each had to first complete a paper questionnaire which asked about relevant work history and education credentials, and experience with SAS programming, large-scale demographic data programs, and project management. *Id.* at 179–81. The questionnaires were graded. Dr. Ogunwole earned a perfect score (100/100). ECF No. 1 ¶¶ 37 & 38.

Of the 20 applicants, 12 advanced to an in-person interview with a three-member interview panel. *See* ECF No. 12-2 at 104. The two Branch Chiefs for each branch—Dr. Roberts and Dr. Merarys Rios ("Dr. Rios") attended all interviews. A third interview panelist also attended, but this panelist varied depending on availability. *Id.* at 30, 113–14, 117, 121.

According to Dr. Roberts, the interview was the most important part of the selection process because "the questions [] asked were designed to provide insight into how a candidate would perform in the specific positions [they] were filling." ECF No. 12-2 at 106. Drs. Roberts and Rios prepared the interview questions in advance. *Id.* at 30, 104, 110. Each candidate was asked the same questions, and at least two of the three interview panelists took detailed notes during each interview. *Id*. at 30. The interviews were followed by panel member discussions about the applicants' performance. *Id.* at 107.

Overall, Dr. Ogunwole's interview had not gone well. For example, when the panel asked Dr. Ogunwole to elaborate on her strengths and weaknesses, she simply read from her most recent performance evaluation. *See* ECF No. 12-2 at 107. Similarly, Dr. Ogunwole could not answer substantively how she would handle personnel conflicts. *Id*. at 107 & 206. And even though Dr. Ogunwole "often paus[ed] for extended periods prior to answering," she nonetheless could not competently discuss her work history as relevant to the vacant positions. *Id*. at 107, 112, 116, 207, 231, 258.

During the interview, it also became evident that Dr. Ogunwole lacked sufficient technical expertise for the position. Although she had taken classes in SAS and had used SAS programs before, Dr. Ogunwole had never created SAS programs herself. ECF No. 12-2 at 107, 116, 204. Dr. Ogunwole also had not demonstrated her ability to function in a management role. *See id.* at 107–08, 112, 116.

3

Two other candidates, Megan Rabe ("Rabe") and Dr. Jacqueline Harth ("Dr. Harth") were more impressive.  Although each had worked far fewer years in the relevant fields,[3] each possessed the requisite managerial and technical experience that Dr. Ogunwole lacked.  *See* ECF No. 12-2 at 30, 176–178, 183–87, 192–95.  Not surprisingly, each also did well in their interviews.  Panelists for Rabe's interview described it as "one of the best they [had] been involved with as supervisors."  *Id*. at 108, 112, 119.  Rabe also discussed her substantial experience using and "creating unique SAS programs," and she exhibited a "comprehensive" and "thoughtful" approach to conflict management.  *Id*. at 119, 192–194, 219.

As for Dr. Harth, although her SAS experience was not as robust as Rabe's, she had taken SAS classes in graduate school and had experience creating new SAS programs for the 2020 Census operations.  *See* ECF No. 12-2 at 185, 212–13, 315.  In the end, the panel viewed Dr. Harth's "strong leadership skills" as dispositive, pointing to her prior experience as a team leader and supervisor of undergraduate students.  *Id*. at 214–15, 331–32.

Accordingly, the panelists unanimously agreed that Rabe and Dr. Harth had demonstrated in the interview that they possessed superior experience in "managing projects, leading teams, developing SAS programs[,] and communicating to technical audiences."  ECF No. 12-2 at 113.  Thus, the panelists all agreed to offer Rabe and Dr. Harth the positions.  *Id.* at 108, 112–113, 119, 123.  Both candidates were presented to Chief of the Population Division, Karen Battle ("Battle") and four Assistant Division Chiefs, who vetted and approved the selections as required for GS-13 level positions.  *Id.* at 30.  Thereafter, Rabe and Dr. Harth accepted the job offers.  *Id.*

On March 12, 2019, Dr. Ogunwole filed an initial complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging unlawful employment discrimination in her non-

---

[3] In fact, Dr. Ogunwole trained Rabe on certain "data review process[es]."  *See* ECF No. 12-2 at 126.

selection for both positions. ECF No. 12-2 at 11. After investigation, the EEOC issued a lengthy Report of Investigation. *See generally* ECF No. 12-2. On April 6, 2021, the EEOC published a final decision, finding that Dr. Ogunwole had not established a *prima facie* case of race, national origin, or age discrimination and alternatively that the Census Bureau had articulated legitimate, nondiscriminatory reasons for her non-selection. *Id*. at 337–42. Dr. Ogunwole next filed this action against the Census Bureau, alleging national origin, race, and age discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* See ECF No. 1 ¶¶ 4, 70, 87, 104.

Relying on the robust administrative record, the Agency now moves for summary judgment in its favor. ECF No. 12. In response, Dr. Ogunwole has submitted a sworn declaration pursuant to Rule 56(d) of the Federal Rules of Civil Procedure in which she contends discovery should proceed before the Court reaches the merits of the Agency's summary judgment motion. ECF No. 15. For the reasons discussed below, Dr. Ogunwole has not persuaded the Court that additional discovery is necessary to adjudicate the claims. Further, because the undisputed record viewed most favorably to Dr. Ogunwole does not support any inference or finding of discrimination, summary judgment in the Agency's favor is warranted.

**II.     Standard of Review**

Summary judgment is appropriate when the Court, construing all evidence and drawing all reasonable inferences in the light most favorable to the non-moving party, finds no genuine dispute exists as to any material fact, thereby entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). "[A] court is not entitled to either weigh the evidence or make credibility determinations" at the

summary judgment stage. *In re French*, 499 F.3d 345, 352 (4th Cir. 2007). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)) (alteration in original). Genuine disputes of material fact are not created "through mere speculation or the building of one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

Where, as here, formal discovery has not taken place, the non-movant may submit an affidavit under Rule 56(d) to demonstrate "specified reasons" that she cannot "present facts essential to justify [her] opposition," without further discovery. Fed. R. Civ. P. 56(d); ECF No. 15-2. The purpose of this affidavit is to ascertain what additional discovery is needed for the non-movant to challenge adequately a summary judgment motion. *See* Fed. R. Civ. P. 56(d). The "non-movant must provide 'a reasonable basis to suggest that [the requested] discovery would reveal triable issues of fact.'" *Agelli v. Sebelius,* No. DKC 13-497, 2014 WL 347630, at *9 (D. Md. Jan. 30, 2014) (quoting *McWay v. LaHood*, 269 F.R.D. 35, 38 (D.D.C. 2010)).

### III. Analysis

#### A. Dr. Ogunwole's Rule 56(d) Request

Dr. Ogunwole argues that reaching summary judgment is premature because the administrative record is "insufficient as to questions of intent and motive" related to possible

discriminatory explanations for her non-selection. ECF No. 15-2 ¶ 4. Dr. Ogunwole presses that she must depose the panelists to "determine their credibility." *Id.* ¶ 8. But vague reference to exploring a witness's "credibility" does not amount to a "clear[] demonstrat[ion]" of the need for discovery. *See Agelli v. Sebelius,* No. DKC 13-497, 2014 WL 347630, at *9 (D. Md. Jan. 30, 2014). This is especially so given that the existing record includes the contemporary interview notes of the panelists (ECF No. 12-2 at 200–78); sworn declarations from each of the selecting officials (ECF No. 12-2 at 101–23); the applicants' resumes and job applications (ECF No. 12-2 at 131–38, 176–99); and the official position descriptions (ECF No. 12-2 at 163–72). Against this record, Dr. Ogunwole generates no more than an amorphous desire to take a run at the witnesses in depositions if given the chance. *See Agelli*, 2014 WL 347630, at *10; *McKinnon v. Blank*, No. DKC 12-1265, 2013 WL 781617, at *11 (D. Md. Feb. 28, 2013).

Dr. Ogunwole also argues that additional discovery is needed on whether she asked questions at the end of her interview (ECF No. 15-2 at 8), who had been the formal "selection official" (ECF No. 15-2 at 9), and how much technical training she provided to Rabe (ECF No. 15-2 at 10). But she does not persuade this Court that these areas are material to the discrimination claims. In essence, Dr. Ogunwole asks to go fish so that she may learn if she has a case at all. *See Agelli*, 2014 WL 347630, at *10. Because Dr. Ogunwole has failed to plausibly demonstrate that any further discovery is necessary to resolve the motion, the Rule 56(d) request is denied.

The Court next turns to the merits of the Agency's motion.

**B.     Discrimination Claims**

Title VII makes it unlawful to discriminate against "any individual with respect to [her] compensation, terms, conditions, or privileges of employment" because of her race or national

origin. 42 U.S.C. § 2000e–2(a)(1). The ADEA likewise prohibits discrimination against individuals on account of age. *See* 29 U.S.C. § 623. As to both anti-discrimination statutes, the Court applies the burden-shifting framework first announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas,* plaintiffs must first make out a *prima face* case of discrimination. For a failure to promote case, the plaintiff must show (1) she is a member of a protected class; (2) she applied for a specific position for which she was qualified; and (3) her non-selection occurred under circumstances giving rise to an inference of discrimination. *See Williams v. Giant Food Inc.*, 370 F.3d 423, 430 (4th Cir. 2004).

Once the plaintiff makes the *prima facie* showing, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the non-selection. *See Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216–17 (4th Cir. 2016); *see also Moore v. Mukasey*, 305 F. App'x. 111, 115 (4th Cir. 2008) (unpublished). If the defendant offers such a reason, the burden then shifts back to the plaintiff to raise a genuine dispute as to whether the defendant's proffered reason is mere pretext for discrimination. *See EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852 (4th Cir. 2001).

Notably, the Agency does not dispute that Dr. Ogunwole, a 63-year-old Nigerian woman, makes out the *prima facie* case on all discrimination theories. *See* ECF No. 12-1 at 16. Similarly, the parties do not dispute that while Dr. Ogunwole performed well on the paper application, the stated reason for her non-selection is that she performed comparatively less well during the interview process; specifically, that she did not demonstrate sufficient competency in creating SAS programs, leading teams, and communicating with others. *See id.* at 18.

The parties do contest, however, whether any genuine dispute exists that the stated reasons for Dr. Ogunwole's non-selection are pretextual. To demonstrate pretext, the plaintiff

must generate evidence from which a reasonable juror could conclude that the stated reasons for non-selection are "unworthy of credence" and that unlawful discrimination actually motivated the decision.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 147 (2000).  Although no one mechanism exists for establishing pretext, a plaintiff must generate *some evidence* that the stated reasons are merely a cover for discrimination.

Dr. Ogunwole first contends that because the record makes plausible that she was superiorly qualified for the positions, the case must proceed on the question of pretext.  *See Heiko v. Columbo Sav. Bank, F.S.B.*, 434 F.3d 249, 259 (4th Cir. 2006); *Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1287 (4th Cir. 1985).  The Court disagrees.  Dr. Ogunwole relies heavily on having received the top grade in the initial questionnaire as proof that she was manifestly more qualified than the selectees.  ECF No. 15-1 at 3.  But Dr. Ogunwole ignores that each of the selectees also scored well.  Rabe received a 99.1/100 and Dr. Harth received an 89.8/100.  ECF No. 12-2 at 173.  Dr. Ogunwole offers nothing that would permit a reasonable juror to conclude that the minimal differences in scores mattered.  Rather, she argues only the non-controversial point that she received the best score "of all those who applied."  *See* ECF No. 15-1 at 6.  But earning the best score among many good scores on one aspect of the application process alone does not demonstrate that she is "'discernably better qualified' than the candidate[s] who received the [positions]."  *See Louis v. City of Rockville*, No. PX-16-1471, 2018 WL 1471681, at *6 (D. Md. Mar. 23, 2018) (quoting *Holley v. N.C. Dep't of Admin.*, 846 F. Supp. 2d 416, 438 (E.D.N.C. 2012)).

Relatedly, Dr. Ogunwole argues that the paper applications should have been accorded greater weight in the selection process than the interviews, and so a reasonable factfinder could conclude that she was more qualified for the position.  ECF No. 15-1 at 9 ("[Dr. Ogunwole's]

9

allegedly poor interview performance . . . [has] little bearing for her position as a statistician and data analyst."). But it is well settled that performance in an interview constitutes a legitimate hiring factor so long as the interview concerns "criteria . . . relevant to the job." *Holley*, 846 F. Supp. 2d. at 438 (citing cases). The open positions here required a person who could act as "team lead," "[c]ommunicate complex and technical program information . . . to a variety of audiences," and function as outside "spokesperson" for the Census Bureau to a variety of stakeholders. *See, e.g.*, ECF No. 12-2 at 106, 112, 118, 122, 168. Evaluation of these core competencies cannot be fully addressed by a paper application alone, and so it is perfectly legitimate for the Agency to weigh the relative strength of candidate interviews. *See* ECF No. 12-2 at 116; *see also Holley*, 846 F. Supp. 2d at 438.

As to this point, Dr. Ogunwole responds that the Agency's heavy reliance on her comparatively poor interview is itself evidence of pretext. *See, e.g.*, ECF No. 15-1 at 3. Specifically, she points to the panelists' stated concerns about her "communication" skills as evidence of their disdain for her "Nigerian accent." *Id.* Nothing in the record supports this allegation. None of the panelists commented on *how* Dr. Ogunwole spoke in the interviews. *See generally* ECF No. 12-2. The panelists instead focused on her substantive responses. The only reference to the way she answered—that she "paus[ed] for extended periods prior to answering questions,"—had been noted only to contrast the high level of generality in her response: that despite Dr. Ogunwole's deliberative demeanor, she was still unable to provide sufficient "detail in many of her responses," and could not "fully support or provide examples to her answers." *Id.* at 107 & 112.

Lastly, Dr. Ogunwole maintains that her longer tenure with the Agency is sufficient to allow the question of superior qualification to reach the jury. But longevity by itself does not

equate to superior qualifications. *See, e.g., Hall v. Forest River, Inc.*, 536 F.3d 615, 620 (7th Cir. 2008) ("Federal anti-discrimination laws also were 'not intended to legislate seniority rights where none exist in the contract of employment.'") (*quoting Tice v. Lampert Yards, Inc.*, 761 F.2d 1210, 1217 (7th Cir. 1985)); *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996) ("[G]reater experience alone will not suffice to raise a fact question as to whether one person is clearly more qualified than another."). Nor does Dr. Ogunwole's prior training of Rabe on certain parts of her job allow the inference that Dr. Ogunwole was better suited for the position than Rabe. *See Bell v. Donley*, 928 F. Supp. 2d 174, 179–80 (D.D.C. 2013) (employer's decision was not "pretextual or driven by discrimination" where plaintiff had "previously trained" the selectee but plaintiff had also interviewed poorly).

In the end, Dr. Ogunwole simply disagrees with the Agency's emphasis on the candidates' performances in the interview. *See* ECF No. 15-1 at 9. But mere disagreement about which among legitimate criteria should factor into the ultimate selection is not sufficient to generate an inference of discrimination. An employee "cannot establish pretext by relying on criteria of her choosing when the employer based its decision on other grounds." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 271 (4th Cir. 2005); *see also Louis*, 2018 WL 1471681, at *4 (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 383 (4th Cir. 1995)) (Courts may not question the "wisdom or folly" of the Agency's business judgment in determining selection criteria so long as those criteria are nondiscriminatory.).

Thus, when viewing the record as a whole and most favorably to Dr. Ogunwole, she has not raised a genuine issue of material fact on the question of pretext. Summary judgment must be granted in the Agency's favor on all claims.

## IV. Conclusion

For the foregoing reasons, the motion for summary judgment (ECF No. 12) filed by Defendant Gina Raimondo is GRANTED. A separate Order follows.

July 22, 2022
Date

/s/
Paula Xinis
United States District Judge